[Civ. No. 1538.   Fourth Appellate District.—January 24, 1935.]

GRACE SCRIPPS JOHANSON, Appellant, v. RIVER-SIDE COUNTY SELECT GROVES, INC. (a Corporation), Respondent.

Hahn & Hahn and Allyn H. Barber for Appellant.

Estudillo & Schwinn for Respondent.

JENNINGS, J.—Plaintiff brought this action to compel the defendant to account for the amount of refunds claimed to be due from defendant as overcharge for defendant's service in picking, packing and selling lemons and grapefruit from plaintiff's ranch and for an unknown amount received by defendant for the sale by it of 863 field boxes of lemons. Plaintiff alleged that the amount of refund was likewise unknown to her. The prayer of the complaint was for an accounting and for a judgment in plaintiff's favor for such amount as should be found due upon such accounting. Defendant filed a joint answer and cross-complaint in

which it was alleged that plaintiff had become a member of the defendant association, a nonprofit corporation; that the by-laws of the defendant provide that no member may withdraw from or cease to be a member of the association unless notice of intention to withdraw is given in writing to the secretary of the association between August 1st and 15th of each year and if such notice is not given membership is deemed to be renewed from year to year and in the event of a violation of such provision and the marketing of fruit by a member outside of the association, the association shall be entitled to collect and receive from such member 25 cents for each field box of fruit thus unlawfully packed or marketed outside of the association as liquidated damages for such breach; that plaintiff violated her agreement of membership with defendant and marketed about 11,363 boxes of lemons and 2,500 boxes of grapefruit outside of the association to defendant's damage in the amount of $3,465, for which amount defendant and cross-complainant prayed judgment against plaintiff and cross-defendant. Upon the conclusion of a trial of the issues raised by the aforesaid pleadings which was had without a jury the court found that the plaintiff and defendant entered into an agreement in January, 1931, by whose terms "to all intents and purposes" plaintiff became a member of the defendant corporation and agreed to deliver all citrus fruit from her ranch to defendant to be packed and marketed by defendant during the season of 1931 and from year to year thereafter until plaintiff withdrew from defendant corporation in accordance with the by-laws of the corporation; that in accordance with the agreement made by the parties and defendant's by-laws and articles of incorporation, defendant picked, packed and marketed citrus fruit from plaintiff's ranch during the year 1931; that plaintiff, without cause or reason, violated her agreement with defendant and marketed fruit outside the defendant corporation to the damage of defendant in the amount of $2,492; that plaintiff, as a member of the defendant corporation, is entitled to a refund of $721.40 from the defendant to be subtracted from the above mentioned amount, leaving a balance due defendant from plaintiff of $1770.60. Judgment was accordingly rendered in defendant's favor for the last mentioned amount and from the

judgment thus rendered the plaintiff has prosecuted this appeal.

■ The principal point presented by this appeal is that the trial court's finding that appellant became a member of the respondent association is lacking in evidentiary support. Proper consideration of this contention necessitates a statement of the evidence bearing upon this feature of the case which was presented during the trial of the action. It may be remarked at the outset that the evidence which related to this matter was conflicting and that therefore the statement which is here included will be based upon the evidence which was produced by respondent viewed in the light most favorable to respondent.

The evidence showed that during the latter part of the year 1930 appellant was the owner and in possession of a ranch in Riverside County containing approximately 174 acres which was largely devoted to the production of citrus fruits and that for some time theretofore such fruits had been produced thereon in considerable quantities; that, at the same time, respondent was a nonprofit corporation engaged in the business of picking, packing and marketing citrus fruits for the growers of such fruits; that N. J. Shupe was the manager of the ranch owned by appellant and was authorized by her to enter into agreements for the disposal of the citrus fruit which was produced on the ranch; that F. H. Cloud was the foreman of the ranch; that during the latter part of the year 1930 Shupe decided he would make a change in the then prevailing arrangements for disposing of the citrus fruit grown on the ranch; that he accordingly directed Cloud to make an investigation of concerns which were engaged in the business of picking, packing and marketing citrus fruit in Riverside County; that during the early part of January, 1931, Leo M. Cross, who was the secretary and manager of respondent, called upon Cloud at appellant's ranch with reference to the handling of the citrus fruit which might be produced on the ranch during the year 1931; that thereafter and during the month of January, 1931, Cloud called upon Cross at respondent's plant in Corona and inquired into respondent's facilities for packing and distributing citrus fruit; that Cloud also made inquiry regarding the charges that would be made for picking the fruit on appellant's ranch and hauling the same from the ranch to

respondent's packing house at Corona and for packing the fruit, and was informed by Cross that respondent was a co-operative institution and that the handling of the fruit was done at cost; that the actual cost of handling fruit was not determined until the end of the year; that prior to a determination of the actual cost of handling fruit a charge of $1.00 per box for lemons and 65 cents per box for grapefruit was deducted from the proceeds of such fruit received by respondent and at the end of the year after the actual cost of handling the fruit had been determined a refund would be made to each grower or member, such refund consisting of the difference between the arbitrary charge assessed during the year and the actual cost as the same had then been determined; that Cloud then informed Cross that it would be necessary for the former to make a report of the investigation of respondent's plant to E. N. Shupe, who would thereafter call upon Cross and discuss the feasibility of having respondent handle the fruit that would be produced on appellant's ranch; that Cloud, unaccompanied by Shupe, again visited respondent's packing house at Corona during the month of January and was again informed by Cross that an arbitrary charge of $1.00 per box was made for handling lemons during the season and that at the end of the year after the actual cost of such handling had been determined each member would receive a refund as above described; that thereafter, during the month of January, 1931, and prior to the 23d of said month, Cross had a number of conversations with Shupe, the first of which took place at appellant's ranch and the remainder at respondent's packing house in Corona, in which conversations Cross explained to Shupe regarding the arbitrary charge that was imposed during the season for handling the fruit and that there would probably be a refund at the end of the season to the growers of fruit, such refund consisting of between 5 cents and 15 cents per box; that Shupe advised Cross that appellant was endeavoring to sell the ranch and that he, Shupe, did not know how long appellant would continue to be the owner of the ranch; that during a conversation which occurred at respondent's packing house on January 22, 1931, Shupe stated to Cross as follows: "All right. We will ship with you for a year"; that on January 23, 1931, Shupe addressed a letter to Cross which was received by

the latter in which he made the following statement: "In accordance with our conversation of the 22nd inst. you are hereafter to take charge of the fruit and forward all statements and remit all collections to Grace Scripps Clark, 808 Pacific Southwest Bldg., Pasadena, California"; that in response to the above-mentioned letter Cross addressed a communication to Shupe on a letterhead which had the following heading: "Riverside County Select Groves, Inc. Cooperative Association. Shippers of All Citrus Fruits", and which communication contained the following statement: "We are very glad you are affiliated with the Mutual Orange Distributors, and more especially with the Riverside County Select Groves"; that on January 26, 1931, Cloud signed a document, which is referred to as a membership card, in which he stated that he became a member of and agreed to deliver to respondent to be packed and marketed in its customary manner all citrus fruit produced on acreage designated as "110 acres—4 oranges—15 grapefruit, 90 acres lemons" during the season of 1931 and from year to year thereafter until he should withdraw in accordance with the by-laws of respondent and that the by-laws of respondent and its rules and regulations are "hereby referred to and made a part hereof, and I agree to abide by the same"; that the acreage referred to in such membership card was the acreage devoted to citriculture on appellant's ranch; that on or about January 28, 1931, respondent commenced to pick lemons which were produced on appellant's ranch and thereafter picked, packed and marketed all lemons and grapefruit produced on said ranch until some time during the month of November, 1931; that the said citrus fruit from said ranch was by respondent mingled with similar fruit produced by other persons who were members of the respondent association in "pools" and thus marketed; that from the proceeds received by respondent from such pools, appellant was paid for the citrus fruit produced by her and marketed by respondent; that in various letters accompanying checks which were remitted to her agent, Shupe, in payment for citrus fruit reference was made to various numbered "pools" as constituting the source of payment for such fruit and in various communications sent to respondent's manager by her agent, Shupe, reference was made to such "pools"; that appellant received a total of $5,647.18 from

respondent for lemons and grapefruit produced by her and handled by respondent during the season of 1931; that respondent did not during the season of 1931 handle any citrus fruit for other persons who were not members of respondent association; that the by-laws of respondent provide that no member of the association shall have the right to withdraw or voluntarily to cease being a member unless notice of an intention to withdraw is given in writing to respondent's secretary between noon of the first and fifteenth days of August of each year, in which event termination of membership becomes effective on the first day of November next following and that if such notice of withdrawal is not given as above stated, the membership shall be deemed to be renewed from year to year; that respondent's by-laws further provide that, if in violation of the provision regarding withdrawal or of any other provision of the by-laws, a member of the respondent association packs or markets any part of the citrus fruit produced by him outside of the respondent association, the said association is entitled to collect and to receive from such member the sum of 25 cents for each field box of fruit thus marketed outside of the association, "it being understood that the damages resulting to the association from such breach are impracticable of definite estimation"; that appellant did not in the manner and during the period stated in such by-laws give notice of her withdrawal from the respondent association; that on December 10, 1931, appellant's agent, Shupe, addressed a communication to respondent in which he advised respondent that appellant had made other arrangements for the handling of fruit produced on appellant's ranch "for this season"; that this letter was received by respondent's manager, Cross, who replied thereto by a letter in which the writer stated that the respondent could not accept appellant's "resignation at this time" and called attention to the above-mentioned provisions of respondent's by-laws relative to voluntary withdrawal from the association and to the penalty provided for marketing fruit outside the association in violation of the by-laws; that the annual meeting of the respondent association was held on December 11, 1931, at which time membership certificates were issued to those persons who were members of said association who were there present; that a notice of such annual meeting was sent to Shupe as appellant's agent;

that neither Shupe nor appellant was present at such meeting and no membership certificate was issued to appellant; that 7,468 field boxes of lemons and 2,500 field boxes of grapefruit produced on appellant's ranch were marketed outside of the respondent association through an agency other than respondent.

As above indicated, the principal problem presented by this appeal is to determine whether or not the above-stated evidence is sufficient to support the trial court's finding that appellant agreed to become a member of the respondent association. In considering this problem it is to be borne in mind that the trial court specifically found that appellant entered into an agreement with respondent in the month of January, 1931, "by the terms of which agreement to all intents and purposes the said plaintiff became a member of defendant's corporation and agreed to deliver to the said defendant, to be packed and marketed . . . all the citrus fruits produced on plaintiff's ranch". It is not clear just what the trial court had in mind by the use of the language "to all intents and purposes". It appears to be indicative of a reluctance on the part of the trier of fact to make an unqualified finding that appellant had agreed to become a member of the respondent association. This apparent reluctance is justified when the evidence with respect to the matter is carefully considered. The record discloses that it was evidently the theory of respondent that the letter of appellant's agent, Shupe, addressed to respondent's manager, Cross, dated January 23, 1931, and the reply of Cross thereto under date of January 26, 1931, constituted an agreement in writing by appellant to become a member of the respondent association. The only language in either of these communications which tends in the slightest degree to support such a theory is contained in the letter of Cross to Shupe wherein the writer states: "We are very glad you are affiliated with the Mutual Orange Distributors, and more especially with the Riverside County Select Groves." It is contended that when Shupe received this communication which was written on a letterhead containing the title "Riverside County Select Groves, Inc., Cooperative Association" he was thereby apprised that he was obligating his principal, the appellant, to become a member of a cooperative fruit marketing association and his subsequent action in per-

mitting respondent to pick, pack and market appellant's fruit completed the contract of membership and bound appellant to conform to the various provisions of respondent's by-laws. It is obvious that the word "affiliated" constitutes the cornerstone of this line of reasoning. The literal definition of the word lends some support to the argument. In *People* v. *Horiuchi*, 114 Cal. App. 415 [300 Pac. 457], it is said that the word " 'affiliated' signifies condition of being united, being in close connection, allied, or attached as a member or branch". This is undoubtedly a correct literal definition of the term as given by the lexicographers. But it must be borne in mind that we are here endeavoring to ascertain the intention of the parties. In this task it is a cardinal rule of interpretation that words are to be given their ordinary meaning and are not to be too technically or literally defined unless they are words whose very use implies that they are terms of technical significance. Bearing this rule in mind and bearing in mind also the surrounding circumstances, we entertain the opinion that, when Shupe was advised of respondent's pleasure in appellant's affiliation with respondent, it was entirely reasonable for him to conclude, as he testified he did, that the communication was merely the ordinary courteous expression of satisfaction in the conclusion of a most ordinary business transaction involving nothing more than the employment of respondent to pick, pack and market appellant's fruit.

In this connection, it must be observed that Shupe's letter refers directly to a conversation which took place between Shupe and Cross on the preceding day and states that "in accordance with our conversation of the 22nd inst. you are hereafter to take charge of the fruit". It is, however, significant to observe that no witness testified that, at this conversation, Cross informed Shupe that in order to engage respondent to market appellant's fruit it would be necessary for appellant to become a member of the respondent association or that the refund which was admittedly discussed would be available only to growers who were members of the association. It is also significant that no witness testified that any such information was disclosed to Shupe at any conversation which occurred between him and Cross at any time prior to the time when respondent commenced to pick appellant's fruit.

It is true that Cross testified that at one of the conversations which he had with Cloud, the foreman of appellant's ranch, prior to the time he had any discussion with Shupe, he stated that respondent was a cooperative institution, that the fruit was handled at cost, that the actual cost of handling fruit was not determined until the end of the year, that prior to such determination an arbitrary specified charge was made and at the end of the year after determination of actual cost a refund would be made to each grower "or member" consisting of the difference between the fixed charge and actual cost as the same had then been determined. It was also shown that Cloud had been directed by Shupe to make an investigation of packing houses in the neighborhood of appellant's ranch. It is, however, significant that no evidence was produced which tended to show that Cloud ever conveyed to Shupe the information that respondent could only be employed to market fruit of growers who should become members of respondent association if indeed it can be fairly declared that such information was conveyed to Cloud himself. It is made clear by the testimony of Cross that Cloud informed him that he had no authority to make a contract for the marketing of the fruit and that Shupe alone possessed such authority. It is quite significant that Cross did not at any time testify that, in any conversation which he had with Shupe, he used the word "member".

The trial court admitted in evidence, over appellant's objection, a membership card in the respondent association which was admittedly signed by Cloud on January 26, 1931. The admission of this card constitutes one of the specifications of error relied on by appellant on this appeal. It is at least doubtful whether, under the circumstances disclosed by the record, this evidence was properly admitted. Assuming, however, for the purposes of this opinion that it was, it is apparent, first, that the trial court did not consider that it had any tendency to establish the fact that appellant thereby agreed to become a member of the respondent association, and, second, that it could not properly have had such an effect. The card is signed by Cloud as an individual and at no place therein does it purport to show that Cloud signed it as appellant's agent or representative. Since the evidence showed that Cloud possessed no

authority to make any contract for the marketing of appellant's fruit and was careful to inform respondent's manager that he had no such authority, the signing of a membership card whereby he individually agreed to become a member of the respondent association could not possibly achieve the result of creating the relationship of membership by appellant in the respondent association. The circumstances surrounding the signing of this card as disclosed by the record are, however, illuminating and strongly indicate that respondent's manager entertained doubt as to whether the letters which had theretofore passed between Shupe and himself were sufficient to constitute appellant a member of the respondent association.

■ It appears to be contended by respondent that since the evidence disclosed that Shupe was informed, as the season progressed, that appellant's citrus fruit was being mingled with the fruit of other growers and that the funds which were from time to time remitted to him in payment for such fruit, were derived from the proceeds of certain numbered ''pools'', this fact was sufficient to give constructive notice to Shupe that respondent was strictly a cooperative institution furnishing service at cost only to its members. From this it is argued that, although the conversations which occurred and the letters which were written in January, may not, of themselves, have been sufficient to establish the relationship of membership, nevertheless the action of appellant in continuing to permit respondent to pick and market her fruit after her agent Shupe had been thus informed of the cooperative character of respondent constituted an agreement by appellant to become a member of the respondent association. This contention is untenable. It is not consistent with the trial court's findings upon the feature of the case which is essential to respondent's cause of action on its cross-complaint. ■ It is obvious that in order to succeed in the cause of action for damages alleged to have been sustained by respondent by reason of appellant marketing her citrus fruit outside of the respondent association in violation of a certain provision of respondent's by-laws, the burden rested on respondent to show that appellant had agreed to become a member of the respondent association. As hereinabove noted the trial court found that appellant made such an agreement but it went further

than this and expressly limited its finding in this regard by declaring that the agreement was made ''in January, 1931''. So far as appears from the record the knowledge respecting the mingling of appellant's fruit with the fruit of other persons and of the fact that payments for her fruit were derived from the proceeds of certain numbered pools was not conveyed to her until some time subsequent to the month of January, 1931. It is difficult to understand how it can be successfully urged that this information subsequently acquired could relate back to a prior time and constitute proof of an agreement by appellant to become a member of the respondent association, which agreement the trial court expressly found was made in January, 1931.

Furthermore, not a scintilla of evidence was presented to the trial court which tended to show that respondent's practice in pooling the fruit which it marketed was in any respect different from the method of marketing citrus fruit employed by commercial concerns engaged in the business of marketing citrus fruit for profit. The only information which the record shows was conveyed to appellant's agent was that her fruit was being mingled with the fruit of other growers for marketing purposes and that the money which she received in payment for her fruit was derived from the proceeds of such ''pooled'' fruit. In the absence of any further showing the trial court was not justified in concluding that appellant was thereby notified that she had become a member of a cooperative marketing association whose by-laws required her to give definite notice of withdrawal in a specified manner at a definite time in default of which she would become subject to an action for damages if she should market fruit produced by her outside of such association.

Appellant complains that the trial court's finding ''that under its by-laws and articles of incorporation, the purchasing or marketing of fruit under special contracts was and is not permitted'' to the respondent is lacking in evidentiary support. It is suggested that this finding contributed to some extent to the court's erroneous finding that appellant agreed to become a member of the respondent association. Whether or not this latter suggestion is correct appellant's objection appears to be well founded, at least so far as the articles of incorporation are concerned.

Among the purposes and powers for which the corporation was formed as set out in the articles of incorporation, it is declared that the corporation shall be empowered "to handle similar products of non-members to an amount equal in value to the products handled for its members". The elaborate by-laws of the corporation, however, do not appear to contemplate that the corporation shall handle any citrus fruit produced by nonmembers. In the final analysis it is not important, in our opinion, to give further consideration to the accuracy of the court's finding in this regard. The chief problem presented on this appeal and the problem which must be solved consists in a determination of whether or not the trial court's finding that appellant agreed in January, 1931, to become a member of the respondent association is supported by the evidence produced during the trial of the action. The solution of this problem requires that a reviewing court shall weigh the evidence, which is always true when such a contention is presented on appeal. In the performance of this task the evidence submitted to the trial court must be considered in the light most favorable to the prevailing party and all inferences from the evidence which the trial court may reasonably have drawn must be indulged to the end that the judgment of the trier of facts shall, if possible, be sustained. This course has here been followed and it is our conclusion that appellant's contention that the evidence is insufficient to sustain the criticised finding respecting the making of an agreement of membership in the respondent association must prevail.

For the reasons stated herein the judgment from which this appeal is presented is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1935.