MATTER OF SCHICK

In Visa Petition Proceedings

NYC-N-31276

*Decided by Regional Commissioner December 15, 1970*

Since the petitioning American company—which has signed a contract with a French company giving the American firm exclusive license to buy and import into the United States machinery manufactured by the French company for 10 years—is not bound to such foreign firm through common ownership and management but has only a contractual relationship with the foreign company, subject to termination, petitioner is not connected with the French company within the contemplation of section 101(a)(15)(L) of the Immigration and Nationality Act, as amended, and the beneficiary, an employee of the French firm, is ineligible for classification as an intra-company transferee under section 101(a)(15)(L) of the Act since he would not be entering the United States to continue to perform services for the same employer or a subsidiary or affiliate thereof.

ON BEHALF OF PETITIONER: Abraham Kaufman, Esquire
521 Fifth Avenue
New York, New York 10017

This matter is before the Regional Commissioner on appeal from the denial of a request to classify an alien as an intra-company transferee under section 101(a)(15)(L) of the Immigration and Nationality Act.

The petitioner is a manufacture of nylon zippers seeking to obtain the services of a technical consultant who is familiar with the manufacture of specialized equipment needed to produce this type of slide fastener. The petitioner is an American corporation established in 1965 and it has no known branches or subdivisions in Europe or any other country. The beneficiary is an alien employed since 1967 by a French corporation which has developed a new nylon slide fastener. The French Company and the petitioner have entered into an agreement whereby the petitioner will manufacture this slide fastener under a license and royalty agreement and have exclusive rights to sell the product in the United States. There is no joint ownership or investment between the two com-

nies, the only connection being the manufacturing and market-
g agreement between them.

The District Director denied this request on two grounds, the
st one being that the two companies do not possess the proper
lationship to confer eligibility for "L" status and the other
ing that the alien was not employed in a managerial capacity.
ι connection with the relationship of the two companies, the
istrict Director stated:

In the matter at hand, the petitioning firm seeks to use the services of an
nployee of a firm which is described as an "affiliate". Blacks' Law Dic-
onary, Fourth Edition, defines an affiliate as follows: "Signifies a condi-
on of being united, being in close connection, allied, or attached as a
ember or branch". *Johanson* v. *Riverside County Select Groves*, 4 Cal.
pp. 2d 114, 40 P. 2d 530, 534. The evidence of record, however, does not
atisfactorily establish that a proprietary relationship, by reason of own-
rship or substantial investment, exists between the two firms. Documenta-
on submitted in support of the instant petition merely establishes that
he petitioning firm was granted a license for a period of ten years plus
ertain renewal periods, to manufacture and sell the foreign firm's prod-
cts in the United States, its territories, dependencies, and possessions.

Article I of the agreement between these two companies de-
cribes the basic purpose of it and states:

(1) (a) FFLB warrants that it has full right to grant and hereby grants
o RICHFORD, the exclusive right and license for the life of this Agree-
nent and any renewals and extensions thereof, to the "know-how" and
echnical information which FFLB has the right to transmit, to enable
RICHFORD to manufacture the article, hereinafter defined, in the United
States, its territories, dependencies and possessions (hereinafter called the
'Territory").

Article II of the agreement provides for the supplying of tech-
nical information to the American company for the purpose of in-
suring the proper manufacture of the licensed article. Further
comment on the nature of the agreement was provided by counsel
in his appeal brief which contained the following:

The French company, therefore, made a contract with the petitioner, by
which they gave the petitioner a 10-year exclusive license to buy from
Prestil and import to the United States these special machines, which
Richford would then use for the manufacture of nylon zippers. Pursuant
to that contract, the petitioner has purchased over $300,000 worth of these
machines, has spent over $1,000,000 in setting up its manufacturing plant
at Carle Place, Long Island, N.Y. and is actually engaged in the manufac-
ture of the zippers.

Among other things, the contract provides for the payment by Richford
Industries to Prestil of a royalty of ½¢ for each yard of the nylon "coil
type chain" which is produced by these machines. The contract further
provides for certain guaranteed minimum annual royalties, which are sub-
stantial.

The contract with Prestil, a copy of which was submitted as an exhibit with the visa petition, also obligates Prestil, at the request of Richford, and at Richford's expense, to send to the United States one or more technicians to train and instruct employees of the petitioner, to assist in setting up the operation, making modifications where appropriate, and providing the special "know-how" of the manufacturer of the machines to the petitioner, the user of them.

The foregoing has been quoted to bring out the nature of the connection between the two companies to determine if the relationship between them is of the type contemplated by section 101(a)(15)(L) of the Immigration and Nationality Act. In this regard, the statute confers eligibility of an alien who:

> . . . has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof. . . .

Counsel for the petitioner submits that an affiliation exists between the two companies by reason of the fact that there is a unity of interest and a meaningful association to further the common interests of both parties. Reference has been made to definitions of the term "affiliation" contained in other sections of the Immigration and Nationality Laws, but they do not appear applicable here inasmuch as the term is used in a different context.

It is evident from a review of the agreement between the two companies and the material submitted on appeal that there are two completely independent companies involved in this matter. The relationship between them is purely contractual, subject to cancellation if conditions are not fulfilled. It is true that large sums of money are involved, but the existence of such sums does not imply an interrelationship based on a common parentage. The relationship existing here can be terminated as opposed to one in which the domestic and foreign organizations are permanently tied together, not limited to a single, specific venture of unknown duration.

Counsel has indicated that the statute here was not limited to American companies having branches abroad but may apply to foreign companies which have branches here. It should be pointed out that when a foreign company establishes a branch in the United States, that branch is authorized to do business under American laws and becomes, in effect, part of American industry. That branch is bound to the parent company through common ownership and management, conditions which are not present in the matter before us. The District Director accurately quoted the intent of Congress as explained in House Report, Committee of

the Judiciary, No. 91–851, February 24, 1970, to accompany S. 2593. Originally, it was intended that only American companies should receive the benefit of this legislation and it was specifically restricted to *transfers within the organization*. However, before final passage, the wording was changed so that as finally enacted, it includes other than American businesses.

The statute which became section 101(a)(15)(L) as first drawn was intended to meet a specific problem being encountered by American businesses, namely, the inability to freely transfer high level alien employees from the foreign offices of a United States concern to the United States because of the limitations on availability of visa numbers. In the case at hand, the legislation was not needed since a remedy already existed. The alien could have been admitted as a visitor for business—not as a visitor for pleasure as is his present status—provided he is employed and paid by the foreign firm he represents, or as the beneficiary of a petition under section 101(a)(15)H) of the Immigration and Nationality Act.

In view of the foregoing, it is concluded that the two companies involved in this matter are not connected in the manner contemplated by section 101(a)(15)(L) of the Immigration and Nationality Act and the beneficiary would not be entering the United States temporarily to continue to perform services for the same employer or a subsidiary or affiliate thereof. That being the case, it is not necessary to pass on the validity of the other ground for denial used by the District Director. The appeal will be dismissed.

*It is ordered* that the appeal be and the same is hereby dismissed.