MATTER OF HUGHES

In Visa Petition Proceedings

LOS-N-29403

*Decided by the Commissioner February 9, 1982*

(1) For the purpose of section 101(a)(15)(L) of the Act, 8 U.S.C. 1101(a)(15)(L), affiliation exists between two companies when the petitioning company: Has a 50% financial interest in the foreign company; has *de facto* control over the foreign company; and, the foreign company exists solely.to sell the petitioner's product.

(2) The terms "affiliate" or "affiliation" may be broadly used to describe business entities which have relationships with one another based upon both ownership and control. Ownership need not be majority if control exists.

(3) The term "affiliate" is sometimes more specifically used to describe the relationship between two companies which have :.o direct linkage but are directed, controlled, and at least partially owned by the same parent corporation.

(4) The term "subsidiary" is a more specific form of affiliation in which the company so described is subordinate to the control of another.

ON BEHALF OF PETITIONER: Ron Jeffrey Tasoff, Esquire
10880 Wilshire Boulevard
Los Angeles, California

Co-Counsel:
Sam Bernsen, Esquire
1000 16th Street, N.W., Suite 511
Washington, DC 20036

This matter is before the Commissioner on certification from the decision of the Western Regional Commissioner denying the visa petition. The Regional Commissioner in dismissing an appeal from the District Director's decision of May 12, 1981, found that the petitioner had failed to establish an affiliate or subsidiary relationship between itself and the foreign employer of the beneficiary.

The petitioner seeks to classify the beneficiary as an intra-company transferee based upon the petitioner's intention to employ him in a managerial capacity and the claim that the beneficiary has been employed abroad for one year as a manager for Smith-Boart, Ltd., which the petitioner characterized as a "fifty percent owned subsidiary". The petitioner is Smith Tool International, a division of Smith International Incorporated. The petitioner is incorporated under the laws of the State

of California and is physically located in the city of Irvine, California. The petitioner is a major United States manufacturer and distributor of drilling and mining equipment. Smith Tool owns a 50% interest in Smith-Boart, Ltd., located in South Africa. Smith-Boart is incorporated as a "private limited liability company" under the South Africa Companies Act of 1973 and is empowered to issue stock. A limited liability company is a legal entity which has no exact counterpart in the United States. The other 50% share of ownership is with Board International, a South African corporation. The purpose of Smith-Boart, Ltd., is solely to manufacture, assemble, and market products of the Smith Tool Company. Smith-Boart, Limited, is also characterized by the petitioner as a joint venture. In letters dated June 3, 1981, and April 7, 1981, Ernest L. Bishop of Smith Tool stated that it is an extremely common practice for multinational corporations to utilize joint ventures because often under foreign law it is not always possible to establish a wholly owned subsidiary. Mr. Bishop states further that in practice these ventures are operated by the managers of the overseas multinational corporation which created them.

Section 101(a)(15)(L) of the Immigration and Nationality Act as amended, 8 U.S.C. 1101(a)(15)(L), provides for classification of the following person as an intra-company transferee:

> . . . an alien who, immediately preceding the time of his application for admission to the United States has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof in a capacity that is managerial, executive, or involves specialized knowledge. . .

Endel J. Kolde writing in *International Business Enterprise* (Englewood Cliffs; Prentice Hall, 1973) defines joint venture as a "business enterprise in which two or more economic entities from different countries participate on a permanent basis". He sees two basic types of such ventures. One is an "equity joint venture" in which there is a joining of capital or capital resources; another form is when one or more of the partners participates by contributing the use of manufacturing processes, patents, trademarks, managerial know-how, or other essential factors, but does not contribute capital. There can also be mixed forms of these two basic types. Kolde states that the "nonequity joint venture" is created under contract law while the "equity joint venture" is created under corporation law. Examining the models developed by Kolde, an "equity joint venture" which is recognized as an entity under local law must be recognized as a "legal entity" as used in section 101(a)(15)(L), *supra*. However, a joint venture established through contract such as the "nonequity joint venture" in its pure form or one which is not recognized as a separate entity under the foreign law would not come within the meaning of an "other legal entity" as contained in the statute. After reviewing the record of proceeding, I conclude that in this instance the

beneficiary was employed abroad for one year by a legal entity under the laws of South Africa. In order to establish eligibility for L-1 nonimmigrant classification here, the petitioner must further establish that it is a subsidiary or affiliate of Smith-Boart in South Africa or in the alternative that it is the same employer.

The Immigration and Nationality Act does not define the term "subsidiary" nor does the House of Representatives Report No. 451 which contains the legislative history of Public Law 91-225 which created the "L-1" intra-company transferee nonimmigrant classification. Corporations and other constructed legal entities are created under the legislative power of each state, the federal government, or by foreign political units; and each jurisdiction has developed its own body of laws, regulations, definitions, and judicial and administrative interpretations concerning corporation structure. Because Congress did not define the term with respect to immigration statutes, we must conclude that the common or general meaning and usage of the term is applicable and not specific statutory, regulatory, or judicial language interpreting narrow areas of law and public policy. It is, therefore, appropriate, that we examine broadly drafted definitions of the term.

Authorities on corporate law differ considerably on the definition of "subsidiary". *Blacks Law Dictionary* (Fifth Edition, St. Paul: West Publishing Company, 1979) and *Words and Phrases* (St. Paul: West. Publishing Company) generally treat a subsidiary or subsidiary corporation as one in which another corporation owns at least a majority of the outstanding shares, and thus has control. The definitions in both of these references are largely derived from court decisions involving insurance liability and tax law. William Fletcher in *The Cyclopedia of the Law of Private Corporations* (Chicago: Callaghan, 1968) also defines subsidiary in terms of majority ownership and control. However, Howard L. Oleck in his *Modern Corporation Law* suggests that control is of major importance in determining business relationships:

> Subsidiary corporation means—one in which control, usually in the form of majority ownership of it shares, is in another corporation Ordinarily some similarity of purpose or auxiliary purpose must exist between the two.

A majority on the meaning of "affiliation" and "subsidiary" is the Securities and Exchange Commission (SEC), an independent regulatory agency which was created to oversee and control the sale and exchange of stock in the United States, and to protect the interest of the public and investors against malpractice in the securities and financial markets. The Commission regulates the sale of stocks of companies and corporations in many industries including retail sales, mining, banking, and many others. Thus its regulations are broadly developed to encompass a great variety of business and commercial relationships.

Under both the Securities Act of 1933, 15 U.S.C. 77a-77aa, and the

Securities Exchange Act of 1934, 15 U.S.C. 78a-78jj, the Commission emphasizes "control" as being determinative as to whether a subsidiary relationship exists. The term "control" is defined as "the possession, direct or indirect, or the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise". 17 C.F.R. 230.405(f).[1] The regulations issued under both of these laws view a "subsidiary" as a form of affiliation in which one corporation is subordinate to another. "Affiliate" is defined as "a person that directly, or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with the person specified". 17 C.F.R. 230.405(a). A "subsidiary" is defined by 17 C.F.R. 230.405(u) as "an affiliate controlled by such person directly, or indirectly through one or more intermediaries".

The Investment Company Act of 1940, 15 U.S.C. 80(a-1)-80(a-52), also covers a broad spectrum of business activities in the United States and is administered by the Securities and Exchange Commission. Section 2(a) of the Act defines "control" as "the power to exercise a controlling influence over the management or policies of a company" and includes a presumption that a person who owns more than 25% of a company's voting securities "controls" that company. The rules adopted by the Commission under the 1940 Act give a definition for the term "subsidiary" substantially identical to those provided in the rules for the 1933 and 1934 Acts.

A review of other Federal statutory law and regulations bring forth examples of much broader interpretations such as the Public Utilities Holding Company Act, 15 U.S.C. 79-79 (z-6), of 1935 which defines affiliation in terms of "control of 5 per centum or more" of the outstanding voting securities. More restrictive definitions also exist such as in the Internal Revenue Code, 26 U.S.C. 1504(a), which requires 80% of stock ownership to establish affiliation. Both of these examples, however, relate to narrow issues, i.e., public utility companies and to liability for federal taxes.

While no specific definition exists for the terms "subsidiary" and "affiliate" in the context of immigration law, the preceding discussion presents sufficient information from which to derive general definitions applicable to modern business practice and organization. In order to be deemed affiliates, companies should be bound to one another by

---

[1] While control by contract is treated in the regulations administered by the SEC, Immigration and Naturalization Service holds that a business created by a contract as opposed to one created under corporation law would not be deemed a "legal entity" as used in section 101(a)(15)(L) of the Immigration and Nationality Act. *See also Matter of Schick*, 13 I&N Dec. 647 (R. C. 1970).

substantial, but not necessarily majority, ownership of shares. The affiliation may be indirect as in the case of two subordinate organizations related to each other by reason of a parent corporation owning a significant portion of the subordinates' stocks. It may also be applied directly to the relationship between two legal entities one of which owns a significant percentage (but not necessarily a majority) of the stock of the other. More importantly, affiliation requires that the financial link between two entities involve control by one over the management of another. In the case of entities related to each other as siblings, the parent entity must have both control and a financial interest in the subordinate companies. Control may be *de jure* by reason of ownership of 51% of outstanding stocks of the other entity or it may be *de facto* by reason of control of voting shares through partial ownership and by possession of proxy votes. In some corporate structures, a relatively small concentration of ownership, perhaps 10%, in conjunction with dispersal of other stock among many minority investors may convey the right to appoint the board of directors. In examining control, the Service may take into consideration one company's ownership of patents, processes, copyrights, or other elements which are used by a related company. Because a structural or economic link is viewed as a characteristic of affiliation by authorities, the foregoing elements of control unaccompanied by significant ownership would not alone be considered as establishing affiliation.

From the foregoing discussion, the terms "affiliate" or "affiliation" may be broadly used to describe business entities which have relationships with one another based upon ownership and control. Ownership need not be majority if control exists. The term "subsidiary" is a more specific form of affiliation in which the company so described is subordinate to the control of another. A company which exercises control of another through ownership is usually referred to as a "parent company". The term "affiliate," is also sometimes more specifically used to describe the relationship between two companies which have no direct linkage but are directed, controlled, and at least partially owned by the same parent corporation.

The record of proceeding before me demonstrates that the petitioner is an affiliate of Smith-Boart, Ltd. The financial interest of 50% in the South African Company as well as the *de facto* control over Smith-Boart, Ltd., establish that affiliation exists between these two companies. In this instance control exists not only from the substantive financial interest present but also from the fact that the only product sold and distributed by Smith-Boart, Ltd., is manufactured by the petitioner. The foreign affiliate exists solely to sell the petitioner's product—mining and drilling equipment.

The record also establishes that the beneficiary has the requisite

managerial experience abroad and.will be involved in such duties in the United States. He is, therefore, entitled to classification under section 101(a)(15)(L) of the Immigration and Nationality Act.

**ORDER:**   The petition is approved.