**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MAHALAXMI AMBA JEWELERS;
KARATS INC.; AKSHAY ANAND,

    Plaintiffs - Appellants,

v.

JEH JOHNSON, Acting Secretary,
Department of Homeland Security;
ALEJANDRO MAYORKAS, Director,
United States Citizenship and Immigration
Services; MARK J. HAZUDA, Director,
USCIS Nebraska Service Center,

    Defendants - Appellees.

No. 15-3214
(D.C. No. 2:14-CV-02321-JTM-KGS)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

    Plaintiffs appeal the decision of the United States Citizenship and Immigration

Services (agency) to deny an I-140 immigrant visa petition seeking to classify

Akshay Anand as a multinational executive or manager. The agency determined that

the plaintiffs had failed to meet their burden of proof on one of the criteria: to

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

establish that Karats Inc., the employer in the United States, is an "affiliate," as defined by regulation, of Mahalaxmi Amba Jewelers, the foreign employer. To establish that the two entities are "affiliates," the plaintiffs must show that they are owned and controlled by the same individual or group in approximately the same share or proportion. The district court affirmed the agency's ruling. This appeal is governed by the Administrative Procedure Act (APA); we affirm.

## I.      Background

Mahalaxmi Amba Jewelers (Mahalaxmi) is a family-owned business in Delhi, India that filed a partnership deed in 2006 under the laws of India. The Mahalaxmi partnership deed states that there are four partners: Shammi Anand, Vijay Anand, Sanjiv Anand, and Akshay Anand. Shammi is the elder brother of Vijay and Sanjiv; Akshay is Shammi's son. Shammi and Akshay each own 16.7% of the business, while Vijay and Sanjiv each own 33%.

Karats Inc. (Karats) is a Kansas corporation that operates a jewelry store in Overland Park, Kansas. The Karats common stock, at one vote per share, is held as follows: Shammi holds 151,500 shares, Sanjiv and Vijay each hold 12,000 shares, and Akshay holds 562,5000 shares. In addition, Shammi holds all 12,000 shares of Class A stock at 70 votes per share.

From 2006 through 2010, the agency annually granted Akshay an L-1A non-immigrant visa allowing him to work at Karats. In 2009, Mahalaxmi filed a petition for an I-140 immigrant visa to classify Akshay as a multinational executive or manager. The petition was denied, as was a second petition. Mahalaxmi filed a

2

third I-140 petition and provided additional documentation at the request of the agency. In the order under review here, the agency held that all of the criteria for granting an L-1A visa had been satisfied except the requirement that Mahalaxmi and Karats were "affiliates" because, although the evidence established Shammi's control of Karats, it did not establish his control of Mahalaxmi.

The agency reviewed the documents Mahalaxmi submitted, including (1) the partnership deed; (2) sections of the Indian Partnership Act of 1932; (3) letters dated February 2012 and April 2014, signed by Shammi, Sanjiv and Vijay stating that the decisions of Shammi, as the eldest, were "final and binding on the other partners in Mahalaxmi Amba Jewellers and . . . on the other shareholders in Karats, Inc.," Aplt. App. Vol. 2, at 115; and (4) a statement from Mahalaxmi's Indian accountant opining that that the February 2012 letter established that Shammi controlled all business decisions concerning Mahalaxmi, *id.* Vol. 1, at 91-92. The agency concluded that the letters signed by only three of the four partners were insufficient to amend the partnership deed because the deed requires any alteration to be included in an addendum, for which no evidence was submitted. In addition, the partnership deed provides that alterations must be mutually agreed upon by all partners, but only three of the four partners signed the purported alteration. The agency then rejected the plaintiffs' argument that they demonstrated Shammi's control of Mahalaxmi through a "course of dealing," as authorized by the Indian Partnership Act, concluding that the evidence was insufficient to demonstrate a course of dealing.

3

The plaintiffs appeal, arguing that they demonstrated Shammi's control of Mahalaxmi by (1) the Mahalaxmi partnership documents, (2) a course of dealing as a family-owned business in India, and (3) the February 2012 and April 2014 letters, which are in essence a proxy agreement. They also contend that the agency failed to apply a broad definition of "affiliates."[1] They further contend that the agency's prior approval of L-1A visas for Akshay compels approval of the I-140 visa.

## II.    Discussion

### A. Standards of Review

Under the APA, we review the district court's decision de novo. *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1059 (10th Cir. 2014). The agency's decision shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[A]n agency's action is arbitrary and capricious if the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Boidiversity Conservation All.*, 762 F.3d at 1060 (ellipsis and internal quotation marks omitted). "A presumption of validity attaches to the agency action and the burden of proof rests

---

[1] In their reply brief, the plaintiffs take strong exception to the government's representation that the applications for the I-140 visa were filed by Karats, when in fact they were filed by Mahalaxmi. We do not consider this dispute because the agency did not rely on it as a ground to deny the visa petition.

4

with the parties who challenge it." *Ron Peterson Firearms, LLC v. Jones*, 760 F.3d 1147, 1162 (10th Cir. 2014) (brackets and internal quotation marks omitted).[2]

## B. Whether Karats and Mahalaxmi Are "Affiliates"

To be eligible for an I-140 immigrant visa as a multinational executive or manager, the petitioning alien must show that he "has been employed for at least 1 year by a firm or corporation . . . or an affiliate or subsidiary thereof," and the alien plans to continue working for the same employer or affiliate. 8 U.S.C. § 1153(b)(1)(C). It is undisputed that the plaintiffs have met these criteria, except for establishing that Mahalaxmi and Karats are "affiliates." As used here, "affiliate" means "[o]ne of two legal entities owned and controlled by the same group of individuals, each individual owning and controlling approximately the same share or proportion of each entity." 8 C.F.R. § 204.5(j)(2)(B). It is further undisputed that Shammi controls Karats. Therefore, the question is whether Shammi also controls Mahalaxmi, thus showing that he owns and controls approximately the same share or proportion of each.

---

[2] The plaintiffs contend that the agency's decision is not entitled to *Chevron* deference, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984) (according substantial deference to an agency's interpretation of "a statutory scheme it is entrusted to administer"), but should instead be reviewed under the *Skidmore* standards, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating agency guidelines are entitled to deference to the extent they have the "power to persuade"). The government does not claim that the agency's decision is entitled to deference, however, so we need not decide which level of deference, if any, is appropriate. *See Hydro Res., Inc. v. United States Envtl. Prot. Agency*, 608 F.3d 1131, 1146 & n.10 (10th Cir. 2010) (en banc) (declining to address level of deference due where agency did not ask for deference to its statutory interpretation).

5

The plaintiffs maintain that they established Shammi's control over Mahalaxmi in the following ways: (1) by the partnership deed and the February 2012 and April 2014 letters purporting to give approximately 82% control of Mahalaxmi to Shammi; (2) through a course of dealing; (3) by the unique nature of Indian family businesses; and (4) by treating the letters as a proxy agreement giving control to Shammi.

Mahalaxmi's partnership deed provides that decisions concerning finances and operation of the business are to be made by mutual consent of the partners. To modify this provision, the plaintiffs produced the February 2012 letter signed by Shammi, Sanjiv, and Vijay, stating, "Due to the fact Mr. Shammi Anand is the eldest in terms of age and senior most in terms of experience in the jewelry trade, his decisions are final and binding on the other partners in Mahalaxmi Amba Jewellers . . . ." Aplt. App. Vol. 2, at 115. A subsequent letter dated April 2014, reiterates the "express intention [of Shammi, Sanjiv, and Vijay] that Shammi Anand has the control of every decision" for Mahalaxmi. *Id.* Vol. 1, at 90. In addition, Mahalaxmi's accountant opined that the February 2012 letter established that Shammi controlled all business decisions concerning Mahalaxmi. *Id.* at 91-92. And the partnership deed allows for "all partners at any time to mutually agree to alter" any term. *Id.* Vol. 2, at 120. The plaintiffs argue that this evidence establishes Shammi's control of Mahalaxmi.

The agency noted that the terms of the partnership deed required alterations to be mutually agreed upon by all partners and be reflected in an addendum to the deed.

6

Because only three of the four partners signed the letters and there was no evidence of an addendum to the partnership deed, the agency rejected this argument. The agency applied the terms of Mahalaxmi's partnership deed. The plaintiffs do not dispute those terms. Thus, the agency did not abuse its discretion or act contrary to the applicable law in relying on Mahalaxmi's partnership deed.

The plaintiffs also point to section 11(1) of the Indian Partnership Act of 1932, which allows "the mutual rights and duties of the partners of a firm [to] be determined by contract between the partners, and such contract may be express or may be implied by a course of dealing." *Id.* Vol. 1, at 95. The plaintiffs contend that the February 2012 letter explaining that Shammi was in control of Mahalaxmi as the eldest in the family, together with the Indian custom whereby the eldest family member is in charge of a family business, demonstrated a course of dealing whereby Shammi controlled Mahalaxmi. The agency found, however, that the documents submitted, particularly the February 2012 letter, were insufficient to establish that Mahalaxmi had in fact adopted such a course of dealing.[3] Having found insufficient evidence to show that Shammi controlled Mahalaxmi through a course of dealing, it follows that the evidence was insufficient to show that Shammi controlled Mahalaxmi as the eldest member of the family business.

---

[3] The plaintiffs complain that the agency failed to consider hundreds of documents demonstrating their claimed course of dealing, but they do not identify or explain how those documents support their argument. "Without a specific reference, we will not search the record in an effort to determine whether there exists dormant evidence [to support a party's claim]." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (internal quotation marks omitted).

The plaintiffs further argue that the agency did not follow its own precedent in deciding that Mahalaxmi and Karats were not affiliates. Relying on *Matter of Tessel, Inc.*, 17 I. & N. Dec. 631 (Acting Assoc. Comm. 1981); *Matter of Barsai*, 18 I. & N. Dec. 13 (BIA 1981); and *Matter of Hughes*, 18 I. & N. Dec. 289 (BIA 1982), they assert that the term "affiliate" should be defined broadly. The plaintiffs maintain that those cases do not require equal control over, or ownership of, both companies. But neither does the applicable regulation, which was promulgated after the cases were decided. Indeed, 8 C.F.R. § 204.5(j)(2)(B)'s definition of "affiliate" includes entities owned and controlled in "approximately the same share or proportion."

The agency did not require the plaintiffs to establish equal control over Karats and Mahalaxmi. Rather, it determined that the plaintiffs showed that Shammi had de facto control over Karats by virtue of his majority voting shares, but failed to show that Shammi also had de facto control over Mahalaxmi. *See Matter of Hughes*, 18 I. & N. Dec. at 293 ("Control may be de jure by reason of ownership of 51% of outstanding stocks of the other entity or it may be de facto by reason of control of voting shares through partial ownership and by possession of proxy votes."). Thus, the agency's application of the relevant law was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

The plaintiffs next argue that the agency should have treated the February 2012 and April 2014 letters as a proxy agreement among Shammi, Sanjiv, and Vijay, whereby Sanjiv and Vijay ceded their collective 66% voting power which, with Shammi's own 16.7% interest, resulted in Shammi having approximately an 82%

8

controlling interest. The plaintiffs rely on *Matter of Hughes*, 18 I. & N. Dec. at 293, for the proposition that control of a company may be shown by "possession of proxy votes."

The agency did not specifically address this claim, and the plaintiffs do not identify where in the record they raised it to the agency. *See* Fed. R. App. P. 28(a)(6); 10th Cir. R. 28.2(C)(2); *Ark Initiative v. United States Forest Serv.*, 660 F.3d 1256, 1261-62 (10th Cir. 2011) (stating "claims not properly raised before an agency are waived, unless the problems underlying the claim are obvious, or otherwise brought to the agency's attention" (brackets and internal quotation marks omitted)). Nevertheless, the agency's decision recognized that control may be shown "by reason of control of voting shares through . . . possession of proxy votes." Aplt. App. Vol. 1, at 80.

We reject the plaintiffs' argument that the February 2012 and April 2014 letters are "in essence" a proxy agreement, Aplt. Opening Br. at 31, and conclude that they did not meet their burden of proof. The letter does not specify that it is a proxy agreement and, moreover, it is equivocal. In contrast to stating that Shammi's decisions are final and binding on the other partners, the letter also states that "[a]ll business decisions in both the firms [Mahalaxmi and Karats] are collective decisions and are taken jointly by all the partners." Aplt. App. Vol. 2, at 115.

### C. Whether Approval of the L-1A Visa is Controlling

Lastly, the plaintiffs contend that the grant of the L-1A visas for 2006 through 2010 for Akshay compels approval of the I-140 visa, given that the agency has not

9

indicated that the L-1A visas were approved in error and both require that Mahalaxmi and Karats be affiliates. *See* 8 U.S.C. § 1101(A)(15)(L) (defining nonimmigrant alien to include an alien who "has been employed continuously for one year by a . . . legal entity or an affiliate . . . thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or . . . affiliate thereof"). They argue that the denial of the I-140 visa was therefore arbitrary and capricious.

We decline to hold that the grant of an L-1A visa is binding on a future application for an I-140 visa. The agency is not required to "approve applications or petitions where eligibility had not been demonstrated, merely because of prior approvals which may have been erroneous." *Matter of Church Scientology Int'l*, 19 I. & N. Dec. 593, 597 (BIA 1988); *see also Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1476 (5th Cir. 1989) (stating Congress did not intend for "the INS to be bound by its initial determination that an employee is a manager for purposes of granting a temporary visa when an application for a permanent visa is filed"); *Q Data Consulting, Inc. v. INS*, 293 F. Supp. 2d 25, 29-30 (D.D.C. 2003) (holding INS's grant of an L-1A visa did not show that the agency committed clear error in denying an I-140 petition, even though both classifications had the same managerial criteria); *but see Omni Packaging, Inc. v. INS*, 733 F. Supp. 500, 504 (D.P.R. 1990) (finding INS abused its discretion in denying a subsequent application when it did not explain how the previous grant of an application was error, even though the basic facts were the same). Moreover, such a rule would impermissibly shift the burden to establish

10

eligibility for a visa from the petitioner to the agency. And the benefits of an I-140 visa (permanent residence) are distinct from those provided by an L-1A visa (temporary non-immigrant status), such that the grant of an L-1A visa does not require approval of a related I-140 petition. Therefore, we cannot conclude that the decision to deny the I-140 petition, despite the earlier grant of L-1A visas for Akshay, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## III.    Conclusion

The judgment of the district court is affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

11